# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

AMY STANCZYK,

         Plaintiff,

vs.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

         Defendant.

No. 15-CV-0097-CJW

**MEMORANDUM OPINION AND
ORDER**

---

### Table of Contents

I.    INTRODUCTION ................................................................................ 2

II.   PROCEDURAL HISTORY ................................................................ 3

III.  UNDISPUTED FACTS FROM PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ................................................................ 4

    A. Plaintiff's Application for Long-Term Disability Insurance .............................. 5

    B. Plaintiff's Claim for Benefits .................................................................. 5

    C. Plaintiff's Work Hours ........................................................................... 6

IV.  STATEMENT OF FACTS FROM DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ................................................................ 6

    A. Plaintiff's Employment ........................................................................... 6

    B. Plaintiff's Application for Long-Term Disability Insurance .............................. 7

    C. Plaintiff's Claim for Disability Benefits ...................................................... 8

    D. Defendant's Denial of Disability Benefits ................................................... 9

V.   SUMMARY JUDGMENT STANDARDS ...................................... 10

VI.  DISCUSSION .................................................................................. 12

    A. Choice of Law .................................................................................... 13

B. Incontestability Clauses ........................................................................ 13

C. Breach of Affirmative Warranty ............................................................ 16

D. Application Date .................................................................................. 18

E. Statute of Limitations........................................................................... 20

F. Doctrines of Waiver, Laches, and Equitable Estoppel .................................. 25

G. Which Policy Controls ........................................................................... 26

H. Plaintiff's Exhibits ................................................................................. 27

VII. CONCLUSION...................................................................................... *28*

## *I.    INTRODUCTION*

This matter is before the Court pursuant to plaintiff's Motion for Partial Summary Judgment.    (Doc. 130).    Plaintiff argues she is entitled to summary judgment on defendant's counterclaim alleging unjust enrichment because she was eligible for coverage.    Alternatively, plaintiff argues she is entitled to summary judgment because: (1) defendant's incontestability clause bars defendant from asserting its counterclaim; (2) defendant's counterclaim is premised on a breach of an affirmative warranty that expired ten years ago; (3) the date of plaintiff's application for coverage is unknown; (4) defendant's counterclaim is barred by the statute of limitations; (5) and defendant's counterclaim is barred by the doctrines of waiver, laches, and equitable estoppel or estoppel by acquiescence.    (Doc. 130).

On April 13, 2017, the Court heard oral argument on plaintiff's motion.    During that hearing, plaintiff for the first time asserted a new theory for summary judgment, alleging that the policy applicable to her did not require she work full time when she applied for coverage and that defendant relied on and attached the incorrect policy to its counterclaim.

The Court addresses each of these arguments below, as well as the admissibility of exhibits plaintiff produced at the hearing in support of her new summary judgment theory.

For the reasons that follow, the Court grants plaintiff's Motion for Partial Summary Judgment on the ground that defendant brought its counterclaim outside of the applicable statute of limitations, but denies her motion on all other grounds.

## II.    PROCEDURAL HISTORY

On August 14, 2015, plaintiff Amy Stanczyk commenced this lawsuit by filing a petition in the Iowa District Court for Linn County. (Doc. 3). The petition generally alleged that plaintiff was a Certified Public Accountant and had entered into a contract with defendant for disability insurance. The petition further alleged that she became disabled in 2006. In 2009, defendant approved plaintiff's disability claim and paid her disability benefits until August 2013, when it terminated plaintiff's benefits on the ground she was no longer disabled. In Count I, plaintiff alleged bad faith denial of insurance benefits. In Count II, plaintiff alleged "tortious breach of contract." In Count III, plaintiff alleged breach of contract.

On September 23, 2015, defendant removed the case to this Court based on diversity of citizenship. (Doc. 1). Defendant filed an answer denying plaintiff's claims. (Doc. 9). On February 1, 2017, with leave of the Court, defendant filed an amended answer and counterclaim, asserting plaintiff was never eligible for coverage and therefore owes defendant the benefits she received under the policy. (Doc. 124).

On January 30, 2017, the parties consented to disposition of this case by a magistrate judge. (Doc. 119).

Plaintiff filed the instant motion for partial summary judgment on February 24, 2017. (Doc. 130). Defendant had previously filed a motion for summary judgment. (Doc. 64). On April 20, 2017, the Court entered an order granting in part and denying in part defendant's motion for summary judgment. (Doc. 178). In summary, the Court dismissed Counts I and II of plaintiff's complaint, and barred her from seeking certain categories of damages. Some of the arguments made in the pleadings regarding defendant's motion for summary judgment overlapped with arguments made in the pleadings regarding plaintiff's motion for partial summary judgment. The Court has, therefore, addressed some of these issues already and will note where that has happened in this order.

### III.   UNDISPUTED FACTS FROM PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Based on the parties' respective filings, the Court finds that the facts set forth below, unless otherwise noted, are undisputed for purposes of plaintiff's motion for partial summary judgment.[1]

---

[1] Many of the paragraphs in plaintiff's Statement of Undisputed Material Facts (Doc. 130-2) do not contain facts. Rather, many of them are simply legal arguments or assertions of her arguments or descriptions of defendant's legal arguments as she interprets them. The Court here has relied only on those portions of her statement of facts that actually assert facts.

### A.    *Plaintiff's Application for Long-Term Disability Insurance*

Plaintiff applied online for a disability insurance policy offered by defendant while she was living and working in Wisconsin.[2]   The exact date of application is a genuine issue of fact; one of defendant's witnesses testified in a deposition that plaintiff applied on July 7, 2004, but that date does not appear in plaintiff's claim file.   The policy became effective on July 1, 2004.   After issuance of the policy, plaintiff paid her premiums each month from her Wisconsin bank account.   Plaintiff continued to work in Wisconsin until September 2006 when she stopped working to assist an ill family member.

The policy provides: "You are full-time at the time you apply for the Coverage if you are regularly working 17½ hours or more per week."[3]

### B.    *Plaintiff's Claim for Benefits*

Plaintiff claims she became disabled as of September 13, 2006.   On February 14, 2007, plaintiff mailed a claim form from Wisconsin to defendant applying for disability benefits.   Plaintiff was still living in Wisconsin when defendant awarded her benefits

---

[2] As will be discussed *infra*, plaintiff alleges for purposes of her motion for partial summary judgment that Wisconsin law applies.   In resisting defendant's motion for summary judgment, plaintiff argued that Iowa law applied.   Defendant does not contest, for purposes of plaintiff's motion for partial summary judgment that Wisconsin law applies, and so the Court will apply Wisconsin law.

[3] This factual assertion is inconsistent with plaintiff's new theory that the applicable policy does not contain this language.   The Court relies on it here, however, as it is contained in plaintiff's statement of undisputed facts and is therefore part of the summary judgment record before the Court.   (Doc. 130-2, ¶59).

under the policy.   Defendant began paying plaintiff disability benefits in April 2009 and those payments continued through July 2013.

### C.     Plaintiff's Work Hours

Plaintiff's Schedule C for the tax year 2006 reported $14,431 in gross receipts. On January 31, 2008, plaintiff's attorney provided defendant a copy of plaintiff's 2006 tax return, including copy of this Schedule C.   Plaintiff's hourly billing rate was $100 per hour.   Plaintiff reported in 2007 that she had more than one client, but plaintiff's W-2 for 2006 showed only one client, Milwaukee County.   From 2003 to 2006, plaintiff's contract with Milwaukee County was for $73,000.

## IV.    STATEMENT OF FACTS FROM DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[4]

### A.     Plaintiff's Employment

Plaintiff was a Certified Public Accountant (CPA) who worked as a part-time independent contractor.   Plaintiff obtained her license as a CPA in 1988.   She is currently 53 years old.   She was a resident of Wisconsin until she moved to Cedar Rapids, Iowa, in 2010.   She graduated from college with an accounting degree and worked for a public accounting firm for three years, then worked for Milwaukee County,

---

[4] Plaintiff's statement of undisputed facts does not, standing alone, provide sufficient facts for the Court to rule on her motion for partial summary judgment.  Her statement of undisputed facts appears to take as granted that other basic facts necessary to understand and rule on her motion are already part of the record, perhaps assuming that facts previously established in relation to defendant's motion for summary judgment are part of the same record.  The Court will liberally construe the record here to incorporate the relevant material undisputed facts established in relation to defendant's motion for summary judgment to complete the factual record necessary here for the Court to rule.

Wisconsin, as an accounting manager. In the mid-1990s, plaintiff left full-time employment and became an independent contractor or "CPA/consultant." Plaintiff stopped working in May 2006.

As an independent contractor, plaintiff worked on projects for her former employer, Milwaukee County, and for two other clients.

Plaintiff's hourly rate was at least $100 and as high as $150. In 2006, plaintiff's only contract work was with Milwaukee County; on that project, plaintiff worked 57.5 hours in January, 39 hours in March, and 6 hours combined for the months of April and May.

Plaintiff asserts that she worked for periods when she was not compensated, including time spent in clients' offices, attending continuing education courses, learning new software, performing administrative duties, making phone calls, reading industry publications, and attending events with colleagues, for example. Plaintiff estimates she spent at least five to ten hours per week performing these types of nonbillable work.

### B.     Plaintiff's Application for Long-Term Disability Insurance

Sometime in 2004,[5] plaintiff applied for long-term disability insurance coverage under a group policy issued by defendant to the American Institute of Certified Public Accountants Insurance Trust ("the Policy"). In the application, plaintiff checked a box indicating she was working full-time.

_____

[5] Apparently, neither party has records to show when, precisely in 2004, plaintiff applied for insurance coverage. In discovery, however, plaintiff asserted she applied in 2004. She also did not dispute Defendant's Statement of Undisputed Facts, paragraph 32, which stated that she applied for and obtained a group long-term disability insurance policy in 2004. (Doc. 64-1).

| 8. Are you now actively at work full-time? (At least 17 1/2 hours/week) | ☒ Yes    ☐ No |

(Doc. 72, at 77). Plaintiff applied for benefits of $3,000 per month were she to become totally disabled. The effective date of coverage began July 1, 2004.

To be eligible for coverage, plaintiff had to meet four conditions. First, she had to be a CPA. Second, she had to belong to the American Institute of Certified Public Accountants. Third, she had to be less than 66 years of age. Finally, she had to be employed full-time. The Policy defined full-time employment. It stated: "You are at full-time at the time you apply for the Coverage if you are regularly working 17½ or more hours per week."

Plaintiff found a 2005 long-term disability brochure by the American Institute of Certified Public Accountants on the internet that she believes is substantially the same as the one she reviewed prior to submitting her application. That brochure stated that "any member . . . who is actively working full-time (at least 17½ hours per week) . . . ." was eligible to request plan coverage, and "there are no earning requirements to qualify for monthly disability income benefit amounts less than $3,500." The brochure further stated that "[t]he members must be actively working on a full-time basis on the day coverage is to begin."

### C.    *Plaintiff's Claim for Disability Benefits*

Plaintiff first suffered symptoms of dizziness, inconsistent heart rate, nausea, fatigue, confusion, and loss of balance on June 6, 2006. Over the summer and fall of 2006, plaintiff felt increased symptoms. After September 2006, plaintiff told Scott

Manske, who supervised her contracting work for Milwaukee County, that her health conditions would prevent her from working indefinitely.

On January 18, 2007, plaintiff submitted a claim for benefits under the Policy.

On May 24, 2007, defendant determined plaintiff was not disabled and denied coverage.

On December 20, 2007, plaintiff appealed the denial of coverage.

On July 24, 2008, defendant denied her appeal and upheld the decision to deny her coverage.

On January 28, 2009, plaintiff took a second appeal.

On April 22, 2009, defendant approved benefits and paid them retroactive to the date of plaintiff's claim (less a six-month elimination period provided in the policy).

## D.    *Defendant's Denial of Disability Benefits*

Defendant periodically reevaluated whether plaintiff was still disabled and entitled to benefits. From 2009 through 2013, defendant accumulated medical records regarding plaintiff's condition. Defendant also conducted video surveillance of plaintiff on several occasions. Based on its investigation, on February 21, 2013, defendant advised plaintiff that "it appears that you have capacity to perform your own occupation." Defendant therefore asked plaintiff to provide supporting evidence of her disability, including completing an Activities of Daily Living form, and asked plaintiff to advise defendant of any additional treating physicians or medical records plaintiff would like defendant to review. Plaintiff provided defendant with additional documentation regarding plaintiff's condition.

On August 21, 2013, defendant informed plaintiff that it had determined that plaintiff was not disabled and was going to deny her benefits effective August 1, 2013.

On December 20, 2013, plaintiff appealed defendant's decision. Plaintiff submitted additional medical records and affidavits.

On March 26, 2014, defendant upheld its decision to terminate plaintiff's disability benefits.

On April 16, 2014, plaintiff's attorney sent a notice of plaintiff's intent to appeal a second time and requested a copy of plaintiff's claim file. On April 25, 2014, defendant sent plaintiff a copy of her claims file.

On September 19, 2014, plaintiff filed a second appeal, submitting additional medical records, including rehabilitation treatment records and gastroenterology evaluation records.

On January 12, 2015, defendant issued its final decision upholding its termination of plaintiff's long-term disability benefits.

## V. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2016). A movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

(citation omitted). "An issue of material fact is genuine if it has a real basis in the record[,]" *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question[,]" *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing version of the truth at trial." *Anderson*, 477 U.S. at 248-49 (internal quotation marks and quotation omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods, Missouri*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88 (citation omitted). *See also Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a

court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them.") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## VI.    DISCUSSION

Plaintiff argues she is entitled to summary judgment on defendant's counterclaim on the ground that she was eligible for coverage. In her brief (Doc. 130-1), plaintiff argued she was eligible when she applied for the policy. At the hearing, plaintiff argued that the policy that applied to her did not require her to be eligible when she applied, but, rather, required her to be eligible when she made a claim for benefits. Alternatively, plaintiff argues she is entitled to summary judgment because: (1) defendant's incontestability clause bars defendant from asserting its counterclaim; (2) defendant's counterclaim is premised on a breach of an affirmative warranty that expired ten years ago; (3) the date of plaintiff's application for coverage is unknown; (4) defendant's counterclaim is barred by the statute of limitations; (5) defendant's counterclaim is barred by the doctrines of waiver, laches, and equitable estoppel or estoppel by acquiescence. (Doc. 151). The Court will address each of these arguments below. First, however, the Court will address the choice of law issue plaintiff raised in her brief.

### A.    Choice of Law

Plaintiff urges the Court to find that Wisconsin law applies to defendant's counterclaim.  Plaintiff asserts there is a true conflict between the laws of Iowa and Wisconsin regarding the incontestability clause and the statute of limitations.   (Doc. 130-1, at 2-5).   In particular, plaintiff asserts that Iowa does not have a general incontestability statute for disability insurance, while Wisconsin does.   (Doc. 130-1, at 3-4).   Plaintiff also asserts that "Wisconsin has legislated stricter statutes of limitations than Iowa for contract claims."   (Doc. 130-1, at 4).   Applying Iowa's most significant relationship test for determining choice of law, plaintiff argues that Wisconsin law should apply.  (Doc. 130-1, at 5-9).   Defendant concedes, for purposes of plaintiff's motion for partial summary judgment, that Wisconsin law applies.   (Doc. 145, at 5-6).  Accordingly, the Court will apply Wisconsin substantive law to determine the merits of plaintiff's motion for partial summary judgment.

### B.    Incontestability Clauses

Plaintiff argues that, under Wisconsin law, defendant is not allowed to contest plaintiff's eligibility after two years.   (Doc. 130-1, at 9-24).   In this regard, plaintiff appears to make two arguments.   First, plaintiff argues that defendant's group insurance policy contained a general incontestability clause that bars defendant from contesting the validity of the group policy after one year for any reason other than non-payment of premiums.   (Doc. 130-1, at 10-13).   Defendant's counterclaim does not, however, contest coverage under the group contract as a whole; it only contests plaintiff's coverage. In other words, defendant is not claiming that all accountants insured pursuant to the group policy were not eligible, for example, because of some issue with the group policy.

Defendant is alleging that plaintiff was not eligible under her individual policy because she was not working full-time. Defendant is correct that the group contract incorporates the individual policy. If the general incontestability clause pertaining to the group policy governed, it would render the individual policy incontestability language superfluous. Contracts should be interpreted in a way that makes no part of the contract superfluous. *See Iowa Fuels & Minerals, Inc., v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991) ("Because a contract is to be interpreted as a whole, it is assumed in the first instance that no part of it is superfluous; an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").[6] Therefore, the Court interprets plaintiff's individual policy such that its incontestability clause governs any denial of coverage by defendant.

Second, plaintiff argues that regardless of the incontestability clause in plaintiff's policy, Wisconsin has enacted its own incontestability statute which bars defendant's counterclaim. (Doc. 130-1, at 13). Wisconsin Statute § 632.76(1) provides:

> Avoidance for misrepresentations. No *statement* made by an applicant in the application for individual disability insurance coverage and no *statement* made respecting the person's insurability by a person insured under a group policy, except fraudulent misrepresentation, is a basis for avoidance of the policy or denial of a claim for loss incurred or disability commencing after the coverage has been in effect for 2 years. The policy may provide for incontestability even with respect to fraudulent misstatements.

---

[6] Defendant acknowledges that "Wisconsin law is consistent [with] . . . Iowa law regarding interpretation of language in an insurance policy" and with not nullifying provisions in a contract. (Doc. 145, at 7 and n.4).

WIS. STAT. § 632.76(1) (emphasis added).   Plaintiff then argues that defendant's counterclaim relies on a false representation by plaintiff, and therefore is barred by Wisconsin's incontestability statute.   (Doc. 130-1, at 17).

In its order granting in part and denying in part defendant's motion for summary judgment, the Court has already concluded that the incontestability clause within the insurance policy itself does not bar defendant from asserting that plaintiff was never eligible for coverage.   (Doc. 178, at 22-25).   The Court reasoned that defendant's counterclaim does not rely on an alleged false statement or misrepresentations by plaintiff.   Rather, the Court found defendant's counterclaim is based on an assertion that plaintiff was not working full-time when she applied, regardless of whether she claimed she was.   The question now is whether Wisconsin's incontestability statute is different from the policy's incontestability clause and bars defendant's counterclaim.

The Court finds the language in the Wisconsin statute is no different in any material respect from the language in the policy's incontestability clause.   The Wisconsin incontestability statute pertains to statements made by the insured, just as does the policy's incontestability clause.   As defendant points out, the Wisconsin legislature knew how to draft language that simply barred an insurance company from contesting coverage after it has been in effect for two years, regardless of false statements, because it did so with regard to life insurance.[7]   With regard to disability insurance, in contrast, the legislature chose to premise incontestability to the challenging of false statements.   WIS. STAT. § 632.76(1).

---

[7] *See* WIS. STAT. § 632.46 ("Except under sub. (3) or (4) or for nonpayment of premiums, no individual life insurance policy may be contested after it has been in force from the date of issue for 2 years during the lifetime of the person whose life is at risk.").

Accordingly, the Court finds that Wisconsin Statute §632.76(1) does not bar defendant from bringing its counterclaim for unjust enrichment and denies plaintiff's Motion for Partial Summary Judgment on this ground.

## C. Breach of Affirmative Warranty

Plaintiff argues that the insurance policy's full-time work eligibility requirement "is an 'affirmative warranty.'" (Doc. 130-1, at 18). Plaintiff argues that a "breach of an affirmative warranty cannot be a ground for rescission[8] of the policy unless the insurer relies on the affirmative warranty and the affirmative warranty is either material or made with the intent to deceive; or, the fact falsely warranted contributes to the loss." (*Id*.). Plaintiff states that Wisconsin law "limits an insurance company's ability to void coverage" and argues that undisputed facts do not satisfy these limits. (Doc. 130-1, at 19-24). Here, plaintiff relies on Wisconsin Statute § 631.11, which provides:

> (b)   Misrepresentation or breach of affirmative warranty.   No misrepresentation, and no breach of an affirmative warranty, that is made by a person other than the insurer or an agent of the insurer in the negotiation for or procurement of an insurance contract constitutes grounds for rescission of, or affects the insurer's obligations under, the policy unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless any of the following applies:
>
> > 1. The insurer relies on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive.

---

[8] The Court notes that plaintiff sometimes asserts that defendant's counterclaim seek rescission of the policy, an assertion defendant disputes. The Court finds that for purposes of this issue, the label applied to defendant's counterclaim is irrelevant.

       2.  The fact misrepresented or falsely warranted contributes to the loss.

WIS. STAT. § 631.11(1)(b).

Plaintiff's argument that this Wisconsin statute bars defendant's counterclaim is a variation of plaintiff's incontestability claim under WIS. STAT. § 632.76(1). Again, however, Section 631.11(1)(b) relates to affirmative misrepresentations by the insured. Defendant's counterclaim does not depend upon proving plaintiff misrepresented the number of hours she worked; it depends upon defendant proving she did not work the number of hours necessary to be eligible for coverage. Therefore, this argument fails for the same reason plaintiff's argument under WIS. STAT. § 623.76(1) and the policy's incontestability clause fails.

Plaintiff makes related arguments, relying on two Wisconsin Administrative Code Sections. (Doc. 130-1, at 19-24). Wisconsin Administrative Code § 3.28(5)(c) provides:

An insurer which issues coverage for a person shall not use the statements, information or material set out in subds. 1., 2. and 3. to void the coverage on the basis of misrepresentation in the application, or deny a claim on the basis of a pre-existing condition defense, unless the insurer has: 1. Resolved patently conflicting or incomplete statements in the application for the coverage; 2. Duly considered information furnished to it: a. In connection with the processing of such application, or b. In connection with individual coverage on the person previously issued by it and currently in force, or 3. Duly considered the material which it would have obtained through reasonable inquiry following due consideration of the statements or information.

WIS. ADMIN. CODE Ins. § 3.28(5)(c) (2017).    Wisconsin Administrative Code §
3.28(6)(c), provides:

> An insurer shall not void coverage or deny a claim on the ground that the
> application for such coverage did not disclose certain information
> considered material to the risk if the application did not clearly require the
> disclosure of such information.

Wis. Admin. Code § 3.28(6)(c).[9]    Plaintiff's reliance on these administrative code
sections is misplaced.    The administrative code provisions, just like the Wisconsin
statutes, bar an insurer from contesting coverage or a claim based either on affirmative
statements or misrepresentations, or a failure to disclose information that the application
required be disclosed.    Again, defendant's counterclaim does not rely on a claim that
plaintiff made a statement, or failed to make a statement, about the number of hours she
worked.    Defendant's counterclaim simply asserts that plaintiff was not working the
number of hours at the time of her application for her to have been eligible for coverage.

Accordingly, the Court finds that Wisconsin's warranty legislation does not bar
defendant from bringing its counterclaim for unjust enrichment and denies plaintiff's
Motion for Partial Summary Judgment on this ground.

### D.    Application Date

Plaintiff argues that summary judgment is appropriate here because "[t]he relevant
period would be the date [plaintiff] applied for the policy," that the actual date is not
known, so "the other factual issues fall by the wayside."    (Doc. 130-1, at 24-26).    In
other words, as the Court understands plaintiff's argument, plaintiff believes the Court

---

[9] Defendant did not address the application of WIS. ADMIN. CODE § 3.28(6)(c), but the arguments
it made regarding the other administrative code section apply with equal force to this provision.

should grant summary judgment in her favor because defendant's counterclaim alleges the application was made on a particular day when it claims defendant was not working full time, and since defendant cannot prove what date that was, its counterclaim is deficient. Defendant argues the only evidence in the record shows plaintiff applied for coverage on July 7, 2004. (Doc. 145, at 20). Defendant further points out that, in any event, plaintiff admitted she applied for coverage in 2004 and argues plaintiff was not working full time at any point in 2004, so the exact date plaintiff applied is not material. (*Id.*).

Summary judgment is inappropriate here for several reasons. First, it appears to the Court, based on the deposition testimony regarding the source of the information establishing the date of application, there is at least some legitimate fact dispute about exactly when plaintiff applied for coverage. Second, even if defendant cannot prove the precise day of application, its counterclaim asserts plaintiff was not working full-time when she applied, which is defined as "regularly working" 17½ hours per week." Viewing the facts in the light most favorable to the non-moving party, the concept of "regularly working" arguably means more than working full-time only during the week plaintiff applied for coverage. The Court has already found in relation to defendant's motion for summary judgment that there is a genuine issue of material fact whether defendant was regularly working full-time when she applied in 2004. Therefore, whether plaintiff applied for coverage on a particular day in July 2004, or some other date in 2004, there is a genuine issue of material fact regarding whether she was "regularly working" full-time at any point in 2004. The precise date in 2004 that plaintiff applied for coverage, therefore, is not material to the question of whether she was eligible for coverage in 2004.

Accordingly, the Court finds that even if it is unknown when in 2004 plaintiff applied for coverage, it does not render defendant's counterclaim for unjust enrichment defective. Moreover, there is a genuine issue of material fact as to when plaintiff applied for coverage. Therefore, the Court denies plaintiff's Motion for Partial Summary Judgment on this ground.

### E. *Statute of Limitations*

Plaintiff argues defendant's "counterclaim is barred by the running of the statute of limitations." (Doc. 130-1, at 30-32). Plaintiff argues that defendant's "cause of action for rescission of contract would have accrued in 2004, when [plaintiff] applied for insurance." (Doc. 130-1, at 30). Plaintiff argues that Wisconsin has a six-year statute of limitation for actions under contract, and that "[r]ecovery based on unjust enrichment is sometimes referred to as a quasi-contract," which plaintiff alleges are subject to the same statute of limitations. (*Id.*). Plaintiff further argues that defendant cannot rely on a "discovery" rule (meaning the cause of action does not accrue until the party discovers it has a cause of action) because there is no discovery rule in Wisconsin for breach of contract actions. Plaintiff relies on *Peterson v. Equitable Life Assur. Soc. of U.S.*, 57 F. Supp.2d 692, 708 (W.D. Wis. 1999), in which the court stated: "Although many states recognize a 'discovery' rule for breaches of contract just as they do for torts, Wisconsin is not one of them. In this state, a cause of action for breach of contract accrues when the breach occurs, even if the breach is unknown and unknowable to the other party to the contract." The *Peterson* Court cited *CLL Assoc. Ltd. P'ship v. Arrowhead Pac. Corp.*, 497 N.W.2d 115, 117–18 (Wis. 1993), for its authority.

Defendant agrees that Wisconsin's six-year statute of limitations applies to causes of action for unjust enrichment, but that its "claim is timely because the statute of limitations tolled until [defendant] discovered that the Plaintiff unjustly retained disability benefits to which she was never entitled." (Doc. 145, at 22). Defendant relies on *Buss v. Rosenow*, No. 96-1145-FT, 558 N.W.2d 706, 1996 WL 635789, at *2 (Wis. Ct. App. Nov. 5, 1996), in which the court stated: "Until the plaintiff discovers or with reasonable diligence should have discovered that he or she has suffered actual damage due to wrongs committed by a particular, identified person, the statute of limitations is tolled." (internal citation and quotation marks omitted).

First, both parties agree that Wisconsin law applies. Second, both parties agree that defendant's counterclaim for unjust enrichment is a quasi-contract claim.[10] The parties agree, for purposes of this motion for partial summary judgment, that the application upon which this quasi contract is based was entered sometime in 2004. The parties further agree that the policy became effective July 1, 2004. Plaintiff filed a claim for benefits on January 18, 2007. On April 22, 2009, defendant began awarding plaintiff benefits (with payments retroactive to 2007). For purposes of this Motion for Partial Summary Judgment, the Court will assume that defendant did not "discover" plaintiff was not eligible for benefits until her deposition in 2016.

The parties agree that Wisconsin's six-year statute of limitations for actions upon contracts applies. WIS. STAT. § 893.43. Where the parties diverge, however, is

---

[10] The Court recognizes that plaintiff sometimes alleges, and defendant denies, that defendant's counterclaim is one for rescission of the contract. (Doc. 149-1, at 9-12; Doc. 175, at 5-9). The Court need not resolve that dispute because the law regarding the statute of limitations for quasi contract applies with equal force whether defendant's counterclaim is one alleging unjust enrichment or rescission.

whether the discovery doctrine applies to a quasi-contract unjust enrichment case. Plaintiff claims it does not and therefore defendant's counterclaim accrued in 2004 and was barred after 2010. Defendant claims the discovery rule does apply and therefore its cause of action did not accrue until it discovered in 2016 that plaintiff was never eligible for coverage. Neither party devoted much attention to this issue or directly addressed the other party's authority.

Defendant strongly asserts that its counterclaim is for unjust enrichment and is not premised on a showing plaintiff committed fraud or made a false statement or misrepresentation. Were it otherwise, defendant's counterclaim would be barred by the policy's incontestability clause. "[T]he elements of an unjust enrichment cause of action under Wisconsin law are: '(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *CMFG Life Ins. Co. v. Banc of Amer. Sec., LLC*, No. 13-cv-579-wmc, 2015 WL 4645976, at *2 (W.D. Wis. Aug. 5, 2015) (quoting *Puttkammer v. Minth*, 266 N.W.2d 361, 363 (1978)). "[F]raud is not a necessary component of such a claim . . .." *CMFG Life Ins. Co.*, 2015 WL 4645976, at *2. Rather, as the parties agree, defendant's counterclaim for unjust enrichment is a quasi-contract claim.

Defendant argues that the discovery rule applies to toll the statute of limitations for its quasi-contract counterclaim. The Court disagrees. "[T]he Wisconsin Supreme Court has expressly declined to adopt the discovery rule in the contract context, even where a breach is 'in practical terms, undetectable.'" *CMFG Life Ins. Co. v. UBS Sec.*, 30 F. Supp.3d 822, 827 (W.D. Wis. 2014) (quoting *CLL Assocs. Ltd. P'ship*, 497

N.W.2d at 118). *See* 14 WIS. PRAC., ELEMENTS OF AN ACTION § 3:2 (2016-17 ed.) ("The statute of limitations for contract actions accrues at the actual time of the breach, rather than at the time of discovery of the breach") (citing *Yocherer v. Farmers Ins. Exchange*, 643 N.W.2d 457 (Wis. 2002) (uninsured motorist claim)). Although the Court recognizes that Wisconsin law is muddled with sometimes inconsistent holdings, the Court finds that the weight of authority provides that the discovery rule does not apply to claims for unjust enrichment. *See CMFG*, 2015 WL 4645976, at *2 (citing *Servicios Especiales Al Comercio Exterior v. Johnson Controls, Inc.*, No. 08-CV-1117, 2011 WL 1304922, at *2 (E.D. Wis. Apr. 1, 2011); *Boldt v. State*, 305 N.W.2d 133, 141 (Wis. 1981), and *Stapel v. Stapel*, No.20009AP1195, 2010 WL 2757237, 789 N.W.2d 753 (Wis. Ct. App. July 14, 2010)). *See also CMFG*, 30 F. Supp.3d at 830-31 (finding a claim based on a quasi-contract unjust enrichment claim is subject to Wisconsin's six-year statute of limitations for contract claims).[11]

Defendant has cited no case law in support of an argument that Wisconsin's statutes of limitations sounding in tort (WIS. STAT. § 893.93), where the discovery rule is available, applies to unjust enrichment claims. Rather, as previously noted, defendant relies on the holding in *Buss* 1996 WL 635789. There, the Wisconsin Court of Appeals applied WIS. STAT. § 893.43 to a claim of unjust enrichment and reversed an order granting summary judgment, finding there was a genuine issue of material fact regarding when the claim accrued. Defendant cites *Buss* for the proposition that "It is well settled that a cause of action accrues when there exists a claim capable of enforcement, a suitable party against whom it may be enforced, and a party with a present right to enforce it."

---

[11] The Court notes that *Peterson v. Equitable Life Ass. Co.*, upon which plaintiff relies, is not directly on point because the defendant insurance company did not bring a counterclaim for unjust enrichment.

(Doc. 145, at 23).   Defendant also cites *Buss* for proposition that "until the Plaintiff discovers or with reasonable diligence should have discovered that he or she has suffered actual damage due to wrongs committed by a particular, identified person, the statute of limitations is tolled."   (*Id.*).   Defendant notes that in both instances the *Buss* Court was quoting *Pritzlaff v. Archdiocese of Milwaukee*, 533 N.W.2d 780, 785 (Wis. 1995).

The Court finds the *Buss* decision was wrongly decided.   The *Buss* court's reliance on *Pritzlaff*, and therefore defendant's reliance on *Buss*, was misplaced because *Pritzlaff* involved a tort claim for personal injury where the applicable statute of limitations was under WIS. STAT. § 802.06, not the statute of limitations applicable to contract claims, WIS. STAT. § 893.43.   The *Buss* Court did not note the difference in the statutes of limitations in the two cases.   The *Buss* Court did not address the issue of whether the discovery doctrine applies to actions founded on contract versus tort, nor did it address conflicting binding authority holding the discovery doctrine does not apply to actions founded on contracts.   Finally, the Court notes that no court has since relied on the holding in *Buss*, in part because it is deemed under Wisconsin's Rules of Appellate Procedure Rule 809.23(3), to have no precedential value.[12]

Having concluded that the discovery doctrine does not apply to defendant's counterclaim to toll the statute of limitations, the next question becomes when plaintiff

---

[12] The Court recognizes that defendant also addresses the Iowa statute of limitations and cites this Court's decision in *Ney Leasing Corp., Inc. v. Cargill Meat Logistics Solutions, Inc.*, No. C09-1051, 2010 WL 3941999 (N.D. Iowa Oct. 6, 2010).   The problems with defendant's reliance on *Ney Leasing* is that it has agreed that Wisconsin law applies for purposes of this motion for partial summary judgment (Doc. 145, at 5-6).   Moreover, *Ney Leasing* is distinguishable because that case involved a failure of a party to make payments on an unwritten contract, whereas defendant is claiming here that plaintiff was never eligible for coverage and therefore began being unjustly enriched when she accepted the first payment in 2009.   The Court's conclusion, were the Iowa statute of limitations to be applied, would be the same.

allegedly breached the quasi-contract. In other words, when did plaintiff first become unjustly enriched by receiving a benefit to which she was allegedly not entitled. Plaintiff would have the Court find defendant's cause of action accrued in 2004 and that it had to bring any claim by 2010. Although that would be true if the claim was for breach of contract, it is not true where defendant's claim is for unjust enrichment. Rather, the Court finds the cause of action accrued on defendant's unjust enrichment claim when defendant first paid plaintiff's benefits to which she allegedly was not entitled. Defendant began to award plaintiff benefits on April 22, 2009. Viewing the facts in the light most favorable to the non-moving party, defendant had to bring its claim against plaintiff by April 22, 2015. Defendant filed its counterclaim on February 1, 2017. (Doc. 124).[13] Therefore, defendant's counterclaim was untimely.

Accordingly, the Court finds defendant's counterclaim is barred by the applicable statute of limitations. It therefore grants plaintiff's motion for partial summary judgment on this ground.

### F. Doctrines of Waiver, Laches, and Equitable Estoppel

Plaintiff argues defendant waived any claim it had for unjust enrichment (Doc. 130-1, at 32-33), that the doctrine of laches bars its counterclaim for unjust enrichment (Doc. 130-1, at 33-35), and that if the doctrine of laches does not apply, the doctrine of equitable estoppel does (Doc. 130-1, at 35-36). The doctrine of waiver does not apply in this case because waiver requires a showing that the person waiving a right knew of

---

[13] Defendant filed its motion for leave to amend its answer and file a counterclaim on November 8, 2016. (Doc. 75). Even if the Court adopted that date as the date upon which defendant brought its counterclaim, it would still be outside the statute of limitations.

the right waived. *Milas v. Labor Assn. of Wis. Inc.*, 571 N.W.2d 656, 659 (Wis. 1997). Taking the evidence in the light most favorable to the non-moving party here, defendant did not know plaintiff was not eligible for coverage until her deposition in 2016, after which it acted promptly to bring the counterclaim. As to the doctrines of laches and equitable estoppel, this Court has already found in ruling on defendant's motion for summary judgment that those doctrines do not bar defendant's counterclaim. (Doc. 178, at 26-29).

Accordingly, the Court finds that the doctrines of waiver, laches, and equitable estoppel do not bar defendant from bringing its counterclaim for unjust enrichment and denies plaintiff's Motion for Partial Summary Judgment on these grounds.

### G. Which Policy Controls

As previously noted, at oral argument on plaintiff's Motion for Partial Summary Judgment, plaintiff for the first time alleged that the policy upon which defendant based its counterclaim was not the policy applicable to plaintiff. Rather, plaintiff maintains a different policy, that did not include language requiring an applicant be working full-time on the date of application, was the true policy applicable to her coverage. This position was diametrically contrary to plaintiff's prior position, her answer to defendant's counterclaim, and inconsistent with her statement of undisputed facts in her motion for partial summary judgment. In any event, the Court finds that summary judgment is wholly inappropriate regarding this new theory. At the very least, there is a genuine issue of material fact regarding which policy applied to plaintiff's coverage. Plaintiff's answer to defendant's counterclaim and her inconsistent admissions regarding statements of undisputed facts alone generates a genuine issue of material fact as to what policy

applies to her. Moreover, a declaration by defendant's employee, William Denitzio, asserts that the policy attached to defendant's counterclaim is the operative policy, which further generates a genuine issue of material fact that precludes summary judgment on this ground.

As the Court noted at the hearing, plaintiff may be correct as to what policy applied to her coverage, but the record before the Court at this stage of the litigation demonstrates that there is genuine issue of material fact as to that question that precludes entry of summary judgment on that ground.

## H. *Plaintiff's Exhibits*

At the hearing on plaintiff's motion for partial summary judgment, plaintiff produced PowerPoint slides, some of which were marked as exhibits (1 through 13) which, at the end of the hearing, she moved into evidence. Defendant objected on foundation grounds and because plaintiff did not show that the exhibits were based upon the summary judgment record before the Court. The Court reserved ruling on admission of the exhibits, giving plaintiff an opportunity to notify the Court by email where in the summary judgment record foundation existed for the exhibits contained in her PowerPoint slides.

On April 17, 2017, plaintiff's counsel sent an email to the Court regarding the exhibits. That email attached new exhibits, labeled A through E. The Court finds plaintiff's email fails to show the Court that foundation exists for any of these exhibits (1-13 and A-E) in the summary judgment records before the Court. Rather, plaintiff's email either explains that exhibits 1 through 13 are spreadsheets or graphs she created based on documents she submits to the Court in exhibits A through E attached to her

email, or they are based on documents filed with the Court in support of other pleadings. Moreover, plaintiff's email consists largely of argument regarding why she believes defendant is relying on the incorrect policy. The Court did not invite further argument. In any event, all of plaintiff's exhibits go to the issue of which policy was in force and applicable to plaintiff, an issue for which the Court has found there exists a genuine issue of material fact that precludes entry of summary judgment on that ground.

Therefore, the Court will not consider or admit any of plaintiff's exhibits 1 through 13 produced during the hearing on plaintiff's motion for partial summary judgment, nor will it consider or admit exhibits A through E attached to plaintiff's email. As no record otherwise exists regarding these documents, and in the event this matter is reviewed by a higher court, the Court directs the plaintiff to electronically file through the CM/ECF system exhibits 1 through 13, and A through E, within three (3) days of the date of this order.

## VII. CONCLUSION

For the reasons set forth herein, the Court **grants** plaintiff's Motion for Partial Summary Judgment (Doc. 130).

**IT IS SO ORDERED** this 28th day of April, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa